**SO ORDERED.**

**SIGNED this 07 day of April, 2009.**



_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| LARRY EDWIN STEELE, SR. and | ) | |
| UNA KAY COLON-STEELE, | ) | Case No. 08-40016 |
| | ) | Chapter 13 |
| Debtors. | ) | |
| | ) | |

### MEMORANDUM OPINION AND ORDER SETTING DEBTORS' MOTION TO MODIFY CHAPTER 13 PLAN FOR EVIDENTIARY HEARING

This matter is before the Court on Debtors' Motion to Modify Chapter 13 Plan Language.[1] Debtors propose to modify their Chapter 13 plan to change the treatment of a mortgage on their homestead. The parties have filed a Joint Stipulation of Facts,[2] which the Court adopts, and have also filed briefs. The Court has jurisdiction to decide this matter,[3] and it is a core proceeding.[4]

_____

[1] Doc. 29.

[2] Doc. 56.

[3] 28 U.S.C. § 1334.

[4] 28 U.S.C. § 157(b)(2)(L).

I.   **FINDINGS OF FACT**

The Court makes the following findings of fact in connection with this motion, based upon the stipulations entered into between the parties,[5] the record in this case, and facts the parties have admitted within their pleadings. On January 9, 2008, Debtors filed their Chapter 13 bankruptcy petition. At the time of filing, Debtors were approximately $2,500 delinquent on the note secured by a real estate mortgage on their homestead located in Topeka, Kansas. Debtors listed this home as exempt, pursuant to Kansas law, on Schedule C, and valued the house at $128,400 on Schedule A.

In their original Chapter 13 plan, which was confirmed in February 2007, Debtors proposed to cure the arrearage owed to First Horizon Home Loans ("First Horizon") over the life of the plan. On January 29, 2008, First Horizon filed a secured proof of claim in the amount of $133,798.10. At the time of the bankruptcy filing, First Horizon had not filed the mortgage with the Shawnee County Register of Deeds.

On June 4, 2008, Debtors filed the current Motion to Modify Chapter 13 Plan Language. In that motion, Debtors sought to add the following language to their Chapter 13 plan:

> It appears the mortgage with First Horizon Home Loan aka First Tennessee Bank, N.A. is imperfected (sic) as the mortgage was not filed as of the date of the filing of the petition and as such my be avoidable by the Chapter 13 Trustee. Until that issue is resolved Debtors will make their normal monthly house payment to the trustee. The trustee will hold the money for distribution until the issue involving the mortgage is resolved. If the lien is in fact unperfected as to the property known as Lot 9 Block F, Meadow View Subdivision in Shawnee County, Kansas, Commonly known as 2840 SE Peck Road Topeka, Kansas, the **debtors will pay the amount of the monthly house payment of $1,170.58 per month to the trustee for a period of 60 months** in exchange for an Order by the trustee releasing any claims held by the Chapter 13 Trustee and First Horizon Home Loan aka First Tennessee Bank,

---

[5]Doc. 56 filed February 6, 2009.

N.A. as to this property. If the lien is found to be valid, the trustee will turn over the monies held to First Horizon Home Loan and the Debtors will once again begin making payments to this creditor." (Emphasis added)

On June 10, 2008, First Horizon objected to the motion to modify,[6] and on September 9, 2008, AIG filed an objection to the motion, as well, purportedly on behalf of First Horizon.[7] AIG is the insurer for Alpha Title, which may be the title company used in the 2007 loan closing that resulted in the mortgage not being recorded.

The Trustee also filed an objection to First Horizon's proof of claim on June 20, 2008.[8] That objection was sustained on August 10, 2008, without objection by First Horizon. The order finds that "Proof of Claim No. 3 filed herein by First Horizon Home Loans shall be disallowed as a secured claim and ALLOWED AS GENERAL UNSECURED IN THE AMOUNT OF $133.798.10."[9]

On February 13, 2009, the Trustee filed an Adversary Proceeding, pursuant to 11 U.S.C. § 544, against Defendants First Horizon and Midfirst Bank. Midfirst appears to be the present owner and holder of the note and mortgage. Although those Defendants filed a Clerk's Motion for Ten Day Extension (and it was granted), neither Defendant filed an answer by the extended answer date, March 30, 2009, and they are both now in default.

The parties all seem to agree that the mortgage on Debtors' home can be avoided by the Trustee pursuant to 11 U.S.C. § 544(a)(3), and that the mortgage is automatically preserved for the

---

[6]Doc. 29

[7]Doc. 40.

[8]Doc. 32.

[9]Doc. 35.

benefit of the Chapter 13 estate pursuant to § 551.  That's where their agreement ends, however, because both First Horizon and AIG contend there are several reasons the treatment of the mortgage in the proposed plan is not allowed by the bankruptcy code.

## II. ANALYSIS

Although the main issue for the Court is whether the proposed plan language is statutorily permissible, the Court must address two preliminary matters before moving to the merits of the motion.

### A. Standing Issues

The first issue is the Trustee's claim that neither First Horizon nor AIG, the only objecting parties, have standing to object to the motion to modify this Chapter 13 plan.[10]  The Trustee claims that AIG, as an insurer for First Horizon or someone in privity with it, is not a real party in interest and lacks standing to object.  The Court agrees.

Section 1324(a) provides that "[a] party in interest may object to confirmation of the plan." Although not specifically defined in the Bankruptcy Code, the phrase "party in interest" has been interpreted to include "all persons whose pecuniary interests are <u>directly affected</u> by the bankruptcy proceedings."[11]  In general, "party in interest standing does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding."[12]

AIG is not a creditor of Debtors, is not the holder and owner of the note or mortgage, and is thus not a real party in interest in this case.  AIG's pecuniary interests, as an insurer, are not "directly

---

[10]See Doc. 58, Trustee's Motion to Strike Objections to Confirmation.

[11]*In re Davis*, 239 B.R. 573, 579 (10th Cir. BAP 1999) (emphasis added).

[12]*In re Refco*, 505 F.3d 109, 115 n.10 (2nd Cir. 2007).

4

affected" by the bankruptcy proceedings—it is First Horizon whose interests are directly affected. AIG could, at most, claim some sort of derivative interest in any distributions received from the estate or potentially have to pay out on its insurance policy, depending on how First Horizon's claim is treated and paid. That kind of interest is not sufficient to afford AIG standing to object to Debtors' proposed Chapter 13 plan.[13]

Although First Horizon was the holder of Debtors' mortgage on the date of filing, on the date it objected to the modification of Debtors' Chapter 13 plan, and on the date it was served with the Trustee's objection to its claim, it apparently transferred its claim to Midfirst Bank, c/o Midland Mortgage Company, on November 17, 2008.[14] As a result, First Horizon is also no longer a real party in interest in this case and lacks standing to pursue its objection to the plan modification.

First Horizon claims that it is in the process of re-purchasing this claim from Midfirst Bank, and that upon re-acquiring its rights, the objection to its standing will be moot. The Court agrees, but this re-purchase must be effectuated forthwith. First Horizon is required, no later than 15 days prior to the evidentiary hearing scheduled herein, to file the appropriate notice and proof that it has obtained rights in the claim at issue sufficient to afford it standing in this case. If no such notice is filed by that time, the Court will grant the Trustee's motion to strike both the objections filed by AIG and First Horizon, respectively, to Debtors' motion to modify their Chapter 13 plan language, and will grant that motion to modify.

   **B.**     **Requirement that Trustee must have avoided the lien**

---

[13]*Id.*

[14]Doc. 49.

5

Case 08-40016   Doc# 72   Filed 04/07/09   Page 5 of 13

The second preliminary issue the Court must decide concerns First Horizon's contention that the Trustee must first avoid the mortgage for the benefit of the estate through an Adversary Proceeding before the Court can approve the modified plan. The Court finds this timing issue is not an impediment to confirmation of the modified plan under the facts of this case.

The quick answer to this argument is that the Trustee already filed the adversary proceeding seeking to avoid the mortgage for the benefit of the estate on February 13, 2009.[15] After receiving an extension of time to March 30, 2009 to respond, neither Defendant AIG nor First Horizon answered. They are in default. This is probably because both have admitted the lien was not properly perfected and that it can be avoided.

Coupling this default with the fact that First Horizon also defaulted in responding to the Trustee's objection to its Proof of Claim on the same basis, there does not appear to be any real dispute that the Trustee can avoid this lien for the benefit of the estate. For this reason, it appears the adversary proceeding will be resolved quickly with either a default judgment or an agreed journal entry in favor of the Trustee.

More importantly, the proposed plan language clearly provides an alternative procedure for the handling of the mortgage, depending on whether the mortgage is ultimately avoided for the benefit of the estate in the adversary proceeding. This alternative language provides protection to both Defendants in the event they should prevail in the adversary proceeding to which they have

---

[15]Adv. No. 09-7012.

defaulted. Thus, the Court finds there is no need to delay the confirmation process while that adversary proceeding is concluded.[16]

### C. Debtors' motion to modify does not conceptually violate the Code.

The Court now turns to the merits of the motion to modify. First Horizon argues that the Chapter 13 Trustee in this case is essentially "selling" the avoided lien rights in this case. In support of this objection, First Horizon relies heavily on *In re Ramsey*.[17]

In *Ramsey*, the Chapter 13 Trustee avoided a mortgage on Debtors' residence for the benefit of the bankruptcy estate. The Trustee then made a side agreement with the original mortgagee whose mortgage had not been properly perfected and whose lien had been avoided. The agreement called for the Trustee to sell the rights to that avoided mortgage lien back to the original lien holder for $4,000.

Agreeing with debtor's objection, the court in *Ramsey* held that the Chapter 13 Trustee lacked the power to sell or dispose of property of the estate, or to liquidate any property of the estate. The court noted that "the Code assures that unsecured creditors will receive at least as much as they would receive if the case were liquidated under Chapter 7. Thus, if a Chapter 13 debtor elects to retain property subject to an avoided and preserved lien now held by the Trustee, the debtor must pay into the plan the value of the lien."[18] The concept articulated by the bankruptcy court is known as

---

[16]Because there has been a default, the Court anticipates that the Trustee/Plaintiff will file a Motion for Default Judgment pursuant to Fed. Rule Bankr. P. 7055, which applies Rule 55 of the Federal Rules of Civil Procedure to adversary proceedings. *See* Rule 55(b)(2) (outlining the procedure to use when party against whom a default judgment is sought has appeared by a representative).

[17]356 B.R. 217 (Bankr. D. Kan. 2006).

[18]*Id*. at 227.

7

the "best interest of the creditors test" (hereafter "best interests test") and is applicable in all Chapter 13 cases pursuant to § 1325(a)(4).

But the facts in this case differ from *Ramsey*. First, unlike in *Ramsey*, it is Debtors who are proposing the plan, not the Trustee.[19] The Trustee correctly argues that Debtors' proposed plan language does not constitute an impermissible "sale" by the Trustee of the lien, as was the case in *Ramsey*, but is instead Debtors' attempt to meet the best interests test. The Trustee acknowledges that the proposed plan must meet this test, and suggests that evidence may be needed to determine how much Debtors must pay to satisfy this requirement.

### D.     Amount Debtors must pay to satisfy best interests test

It appears to the Court, after carefully reviewing all of the briefs, that all the parties essentially agree that the real issue here is whether or not Debtors' modified plan complies with the best interests test. The parties' real disagreement concerns the amount that Debtors must pay through their Chapter 13 plan in order to satisfy that test.

First Horizon claims that the "value" of the lien that must be paid is capped by (1) the amount of the debt on the petition date (here $133,798.10), (2) the entire fair market value of the property, or (3) the amount necessary to pay all unsecured creditors in full, whichever is less. In support of this position, First Horizon relies upon *In re Ramsey* and *In re Haberman*.[20]

The Court disagrees with First Horizon's position. In *Haberman*, a Chapter 7 proceeding, the debtors owned a vehicle valued at $2,000 at the time the bankruptcy was filed; they owed over

---

[19]In *Ramsey*, the debtors objected to the Trustee's attempt to sell the lien for $4,000, which required Debtors to pay the entire unrecorded mortgage to the otherwise unsecured creditor—its mortgage holder.

[20]347 B.R. 411 (10th Cir. BAP 2006), *aff'd*, 516 F.3d 1207 (10th Cir. 2008).

8

$3,000 on that same vehicle on the date of filing. The trustee successfully avoided the lien on the vehicle because it was not properly perfected, and the lien was preserved for the benefit of the estate.

During the pendency of the case and before the avoidance action was fully resolved, the debtors paid the debt in full to the bank, and the trustee then sought turnover of the full amount paid to the bank. On appeal, the court affirmed the bankruptcy court's holding that the Chapter 7 trustee was entitled to recover the value of the creditor's claim as of the date of bankruptcy, or the value of the collateral on that day, whichever was less.[21]

Although *Haberman* is instructive on the issue of the value a Chapter 7 trustee is entitled to receive following the avoidance of a lien, that is not the ultimate issue that must be decided here. In order to satisfy the best interests test in a Chapter 13 proceeding, debtors are required to pay into the plan an amount equal to, or greater than, the amount the creditors would <u>receive</u> if their assets were liquidated under a Chapter 7 proceeding.[22] In other words, creditors must receive at least as much money from a Chapter 13 plan as they would receive in a Chapter 7.

In performing a hypothetical liquidation analysis, the starting point is obviously the value of the property the Chapter 7 Trustee would be entitled to liquidate, as explained in *Haberman.* That is only the starting point, however. From that amount, one must deduct the costs the Chapter 7 trustee will likely incur in completing the liquidation, as well as the trustee fees and any other expenses that would be incurred in an actual Chapter 7 liquidation of the property.[23]

---

[21]*Id.* at 413.

[22]*In re Ramsey*, 356 B.R. at 227 (citing 11 U.S.C. § 1325(a)(4)).

[23]*See* 8 *Collier on Bankruptcy*, ¶ 1325.05[2][d], at 1325-21 (noting that the "statute's language looks to the amount that would be *paid* if there was a chapter 7 liquidation"). (Emphasis in original).

9

First Horizon argues that, in order to satisfy the best interests test, Debtors must pay into the Chapter 13 plan the full amount of First Horizon's claim, the full value of the house, or the amount necessary to pay all creditors in full, whichever is less. In making such a claim, however, First Horizon has failed to account for the fees and expenses that must be considered when performing a hypothetical liquidation analysis.[24] In order to satisfy the best interests test, Debtors are not required to pay into their Chapter 13 plan the full amount a Chapter 7 Trustee could potentially recover or the full value of an asset that could be liquidated, but instead they are required to pay into their Chapter 13 plan an amount that is at least equal to the amount that the creditors would receive following a Chapter 7 liquidation. When factoring in expenses such as Chapter 7 Trustee's fees and costs of sale,[25] the amount creditors are due to receive will almost always be considerably lower than the full value of the property acquired by the Chapter 7 trustee. What that amount is, however, will have to be determined following an evidentiary hearing.

Second, *Ramsey* does not directly support First Horizon's position. In *Ramsey*, the court specifically noted that

> "[i]f the Debtor cannot pay the lien's value <u>up to an amount to pay unsecured creditors as much as they would have realized under Chapter 7</u>, the remedy is either (1) conversion (at which point the Chapter 7 liquidating trustee may sell the lien for the highest offer); or (2) dismissal (at which point the unperfected lien will revert back to [the creditor])."[26]

---

[24]*Id*. at ¶ 1325.05[2][d], at 1325-20 ("The determination regarding what property creditors would receive in a liquidation should also take into account the administrative expenses that would be incurred in a chapter 7 case. These expenses may include, in addition to costs of sale, costs such as capital gains taxes incurred by the trustee who disposes of property.")

[25]*See In re Delbrugge*, 347 B.R. 536 (Bankr. N.D.W. Va. 2006) (holding that best interests test must take into account costs of sale, trustee's fees and other amounts that would be deducted in chapter 7 liquidation of property) and *In re Dixon*, 140 B.R. 945 (Bankr. W.D.N.Y. 1992) (allowing a 10% deduction from estimated sales price to account for costs of sale in chapter 7 based on court's experience).

[26]*Ramsey*, 356 B.R. at 228 (emphasis added).

10

The court recognized that the best interests test is satisfied by determining the amount that creditors would <u>receive</u> in a Chapter 7 liquidation, not the amount the Trustee could likely recover before the costs of liquidation.[27]

The Court also must address Debtors' argument that because the subject real property is their exempt homestead, and First Horizon and AIG have no security interest in it, there is no available value to the bankruptcy estate because a Chapter 7 Trustee could not sell the exempt property. In making that argument, however, Debtors seem to confuse the relative value of First Horizon's general unsecured claim, and the value of the mortgage to the Trustee, who holds the mortgage for the benefit of the estate. The avoidance of the lien by the Trustee does not extinguish the mortgage; instead, it merely transfers the mortgage rights to the bankruptcy estate. In other words, the real property remains subject to the lien pursuant to § 522(c)(2), despite the claim of exemption regarding the property.[28] There is still a valid mortgage against Debtors' property; it is just no longer held by First Horizon. That lien has value, as explained in *In re Haberman*,[29] and Debtors must account for that value in formulating their Chapter 13 plan.

The Court finds that the proposed modifications to the Chapter 13 plan can be sustained, but only if Debtors demonstrate that they have met the best interests test by a preponderance of the

---

[27]The Court notes that *Ramsey* contains some language that could be misinterpreted on the issue of what is required to meet the best interests test. However, the facts of *Ramsey* were such that the test was not met under any interpretation, which likely led to any potentially ambiguous language on this subject.

[28]*See In re Early*, 2008 WL 2073917, 3 (Bankr. D. Colo. 2008), noting that "[u]nder 11 U.S.C. § 522(c)(2), if the lien on the Property is avoided and, as a consequence, automatically preserved for the benefit of the estate under 11 U.S.C. § 551, the Property will remain subject to the lien pursuant to 11 U.S.C. § 522(c)(2), despite the claim of exemption regarding the Property."

[29]*In re Haberman*, 347 B.R. at 416-17.

11

evidence.[30] That test will only be met upon a showing that the amount they propose to pay into the Chapter 13 plan ($1,170.58 x 60 = $70,234.80)[31] meets or exceeds the amount that creditors would receive if this case were liquidated under a hypothetical Chapter 7 liquidation. The amount that would be recognized in a hypothetical liquidation must take into account not only the value of the property and what it is likely to bring in a sale by a Chapter 7 trustee, but also expenses such as costs of sale and Chapter 7 trustee's fees. Obviously, those costs and expenses reduce the net available for payment to creditors under a liquidation analysis.

Because the Court has not received any evidence of the liquidation value of this property, and the parties have not stipulated to that fact, the Court will set this matter for evidentiary hearing on its **June 16-17, 2009** stacked evidentiary docket.[32] If Debtors can show that the amount they propose to pay into the Chapter 13 plan meets the best interests test, the Court will grant the motion to modify the plan.

---

[30]The proponent of a Chapter 13 plan has the burden to show that all of the tests under § 1325(a) have been met. *In re Alexander*, 363 B.R. 917, 921-22 (10th Cir. BAP 2007). *See also In re Hutchinson*, 354 B.R. 523, 531 (Bankr. D. Kan. 2006) (holding that Debtors bear the burden of proving that they have met all of the requirements of § 1325, including the best interest of the creditors test under § 1325(a)(4). Judge Nugent's *In re Dick* decision, 2008 WL 294583 (Bankr. D. Kan. 2008) is also instructive on several issues in this case ("In order for the Court to confirm the Dicks' chapter 13 plan, the debtors must show by a preponderance of the evidence that the plan meets the requirements of § 1325(a). With regard to unsecured creditors, the plan must return to the unsecured creditors not less than they would receive were the Dicks' assets to be liquidated in a chapter 7 case. The Court must therefore determine what these parts might bring in a chapter 7 liquidation, keeping in mind that a chapter 7 trustee would incur administrative expense in liquidating this property. The Court must make two mathematical calculations: (1) the Court must estimate what would be distributed to creditors in a chapter 7 case; and (2) the Court must determine what the present value of the stream of payments to be made to unsecured creditors under the plan is. Both determinations are made as of the 'effective date of the plan,' which most courts construe to mean the petition date.").

[31]If this modified plan is ultimately confirmed, Debtors may actually have to pay more than $1,170.58 per month just to pay the liquidation value over the remaining life of the plan because a significant number of the 60 months allowed will have elapsed by the time the evidence is presented, and a decision entered. Their budget will obviously need to show it is feasible for them to make such payments.

[32]This setting allows the parties 10 weeks to obtain necessary evidence (appraisal and potentially expert testimony) regarding the value of the property as of the effective date of the modified plan, as well as evidence regarding liquidation costs.

Case 08-40016    Doc# 72    Filed 04/07/09    Page 12 of 13

### III.     CONCLUSION

The Court finds that neither AIG nor First Horizon currently has standing to object to Debtors' motion to modify their Chapter 13 plan. Based upon First Horizon's representation that it is in the process of reacquiring its rights in the property, the Court will allow First Horizon until **June 1, 2009** to complete that transfer <u>and</u> file the appropriate documentation with the Court. In the event First Horizon has not shown that it has standing by that date, the Court will strike its objection and that of AIG to the motion to modify the plan language.

The Court sets this matter for evidentiary hearing on its **June 16-17, 2009** stacked evidentiary docket to determine whether Debtors' proposal to pay $70,234.80 to the Chapter 13 Trustee satisfies the best interests test. If Debtors can show that the total of these payments will provide their creditors with at least as much as those creditors would receive under a hypothetical liquidation analysis, then the plan can be confirmed with the amended language.

**IT IS SO ORDERED**.

# # #